1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT
8               CENTRAL DISTRICT OF CALIFORNIA
9
10   IVAN RENE MOORE,                    Case No. 2:15-cv-8021-ODW (GJS)

11              Plaintiff

12        v.                             **AMENDED REPORT AND**
                                         **RECOMMENDATION OF**
13   MICHELLE ROSENBLATT et al.,         **UNITED STATES MAGISTRATE**
                                         **JUDGE**
14              Defendants.

15

16        United States Magistrate Judge Gail J. Standish submits this Amended Report

17   and Recommendation ("Amended Report") under 28 U.S.C. § 636 and General

18   Order No. 05-07 of the United States District Court for the Central District of

19   California to the Honorable Otis D. Wright II, United States District Judge.

20                          **INTRODUCTION**

21        Although the operative complaint is incredibly lengthy and contains more

22   than 300 numbered paragraphs spanning more than 80 pages, this case can be easily

23   summarized.  Plaintiff Moore believes that Defendant Bragg (his former live-in

24   domestic partner) stole some of his property, and it appears that a California state

25   jury agreed with him.  It also appears that the California state courts have

26   subsequently entered one or more judgments on that verdict.  What is not clear to

27   the Court is whether the judgment entered on the jury verdict is presently

28

1   enforceable (as opposed to, enforceable at the termination of the case).[1]  Indeed,

2   what the Court believes to be the last submitted order on the matter—a January 2015

3   order—states that Moore has an interlocutory judgment that was not then

4   enforceable.  [*See* Dkt. 16, First Am. Compl. ("FAC") ¶¶ 69, 78.][2]  That said, the

5   Court need not engage as a roving investigator into the truth of Moore's status and

6   whether or not he actually possesses a final state court judgment that is enforceable.

7   Having carefully reviewed the record and the applicable law, the Court finds that

8   Moore's First Amended Complaint ("FAC") fails to state a claim, and therefore

9   recommends that Defendants' Motion be GRANTED with leave to amend select

10  claims, as discussed further below.

11                          **PROCEDURAL HISTORY**

12          On October 13, 2015, Moore brought this action alleging seven counts against

13  a large swath of defendants.  [Dkt. 1.]  After certain defendants filed a motion to

14  dismiss [Dkts. 12 & 13], Moore sought and obtained leave to file an amended

15  complaint, the FAC, which is now the operative pleading.  [Dkts. 14 & 15.]

16          Defendant Kimberly Bragg in one motion, and certain other served

17  defendants in another, moved to dismiss the FAC on December 17, 2015.  [Dkts. 20,

18  21.]  Just one day later, Moore filed an ex parte application for Rule 34 discovery.

19  [Dkt. 26.]  The Court denied the ex parte component of the application and

20

21

---

[1] Moore has submitted voluminous but incomplete copies of orders, motions, and writs filed in the state court.  Even after the Court's request, no party has actually provided a clear picture to the Court of the state court proceedings' status.

[2] The Court is sympathetic to Moore, based on the limited record before it.  It appears that the state trial court initially entered an order it defined as an interlocutory judgment in a bifurcated case that was immediately enforceable, only to later determine that it was an interlocutory judgment that could not be enforced. Rather than await proper resolution of that pending case, Moore began a flurry of litigation that resulted in his being determined to be a vexatious litigant.  In short, Moore appears to have exacerbated the situation.

converted the motion into a motion for early (pre-Rule 16 conference) discovery. [Dkt. 28.]

On January 19, 2016, the Court held a hearing on the discovery motion and took it under submission. [Dkt. 36.] Currently pending before the Court are the two motions to dismiss and the motion for early Rule 34 discovery. The Court is also faced with an expired deadline to serve certain defendants under Federal Rule of Civil Procedure 4(m).

On April 19, 2016, the Court issued its Report and Recommendation ("Report") on these motions. [Dkt. 43.] On May 9, 2016, Moore filed his Objections to the Report. [Dkt. 45.] No Reply was filed. Having reviewed the Objections, the Court issues this Amended Report recommending that Moore's case be dismissed for the reasons outlined below.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

## I. The Parties

The FAC names nearly twenty defendants, which fall into several categories, and fifty Doe defendants. First, there is Kimberley Bragg,[3] a retired Los Angeles Police Department officer who allegedly stole Moore's mother's property, which had been put in Bragg's possession in trust for Moore, his companies, and his friend Ronald Hills. [FAC ¶¶ 30, 45-46.] Second, Moore sues several Los Angeles Superior Court judges, in their official and individual capacities (the "Judges")—Judges Richard Fruin, Michelle Rosenblatt, Barbara A. Meiers, Teresa A. Beaudet, Daniel J. Buckley, Frederick C. Shaller, Michael M. Johnson, and Michael J. Raphael—as well as the Clerk of the Los Angeles Superior Court, Claudia Jasper (the "Clerk," and together with the Judges, the "Judicial Defendants"). [FAC ¶¶ 13-28, 33.] Third, Moore sues several Los Angeles public entities and police officers, none of whom Moore appears to have served (the "Unserved Los Angeles

---

[3] The FAC includes a number of aliases. [FAC ¶ 29.]

3

Defendants"): the City of Los Angeles, the County of Los Angeles, the Los Angeles Police Department, the Los Angeles County Sheriff's Department, the Internal Affairs division of the Los Angeles Police Department, and Deputies Chris Jones and Baum.  [FAC ¶¶ 9-12, 31-32.]

## II.     Factual Allegations

According to the FAC, in or around 2000, Moore's mother transferred certain real property to Ronald Hills, for the benefit of Moore, his corporations, and for Hills (the "Property").  [FAC ¶¶ 39, 45.]  Moore lived at the Property for many years (from 1992-2002), and performed his work as a music producer from its multi-million dollar recording studio.  [FAC ¶¶ 40-42, 44.]

In 2002, Moore and Bragg (who was then his neighbor and a retired police officer) became domestic partners.  [FAC ¶ 44.]  Two years later, Moore transferred the Property to Bragg, allegedly "to hold in trust for the benefit of Plaintiff Ivan Rene Moore and his corporations, and Ronald Hills."  [FAC ¶ 46.]  Bragg has denied that the transfer was as a trust.  [*Id.*]

Moore's and Bragg's relationship dissolved, and Bragg sued Moore in state court to remove him from the property, alleging that she owned the property and that Moore was a mere tenant.  [FAC ¶ 47.]  Judge Richard Fruin presided over the unlawful detainer action.  [FAC ¶ 48.]  While the action was pending, Bragg supposedly destroyed, transferred, or sold much of Moore's professional and personal property.  [FAC ¶ 49.]  The FAC alleges that Fruin wrongly found in favor of Bragg in the unlawful detainer action and ultimately had Moore evicted.  [FAC ¶¶ 52, 64.]  That determination was later overturned on appeal.  [FAC ¶ 66.]

As the purportedly beneficial owner of the Property (and the professional and personal effects it contained), Moore and Hills filed three state actions seeking their return.  [FAC ¶¶ 51, 69.]  Judge Chalfant apparently presided over some (or maybe all) of these matters, and dissolved a temporary restraining order (after speaking with Judge Fruin) because Fruin would consolidate the motions.  [FAC ¶¶ 53-54.]

4

1  Fruin did not consolidate the motions, and supposedly "made statements on the

2  record revealing his bias and prejudice and extreme ill will against Plaintiff Moore."

3  [FAC ¶ 55; *see generally* FAC ¶¶ 56-60.]

4     While these legal proceedings were ongoing, Moore apparently reached out to

5  all of the defendants, in various methods of communication, about Bragg's alleged

6  wrongdoing by theft of his property and threats to Moore.  [FAC ¶¶ 61-62.]

7  According to the FAC, no law enforcement officials were willing to assist Moore

8  and instead sided with Bragg, despite four court orders for the return of his property.

9  [FAC ¶ 63.]  He blames their inaction on both their loyalty to Bragg as "one of their

10  own" and Moore's race and gender (African American male).  [*See, e.g.*, FAC ¶ 75.]

11     The FAC continues, in inordinate detail, to describe Moore's view of his state

12  proceedings—much of which has been omitted for the sake of brevity.  Important

13  here, the FAC alleges "Plaintiff is still pursuing these four other actions against

14  Bragg to date."  [FAC ¶ 78.]  In general, Moore also alleges that numerous judges

15  failed to grant him discovery into Bragg's finances, at least some of whom did so

16  "because of Plaintiff Moore's gender and race, and to protect Bragg."  [*See, e.g.*,

17  FAC ¶¶ 79-80.]  Moore was subsequently found to be a vexatious litigant, a finding

18  Moore disputes.  [FAC ¶¶ 82, 109.]  He further contests a veritable trove of state

19  court orders and statements, claiming that they were made wrongly, and with racial

20  animus.  [*See generally* FAC ¶¶ 110-21.]

21     Ultimately, in July 2013, the FAC alleges that Moore successfully obtained a

22  special jury verdict against Bragg (trespass and conversion) for $5.65 million and

23  return of his property, on which Judge Rosenblatt entered a judgment on September

24  3, 2013.  [FAC ¶¶ 122-23.]  According to the FAC, she had entered another

25  interlocutory judgment in November 2013.  [FAC ¶ 128.]  Then, Rosenblatt

26  subsequently reduced the award to $3.15 million and entered judgment again on

27  September 3, 2014.  [FAC ¶¶ 123, 128.]

28

1    In addition to the ongoing dispute regarding Moore's jury award for Bragg's

2    trespass and conversion, the FAC alleges that Judge Beaudet wrongly denied Moore

3    a temporary restraining order based on the mistaken impression that a domestic

4    violence restraining order was issued against him.  [*See, e.g.*, FAC ¶¶ 139-41.]

5    According to the FAC, Bragg's application for a domestic violence restraining

6    order, two and a half years after the alleged incident where Moore hit her, was

7    denied.  [FAC ¶ 140.]  Ultimately, Beaudet restrained Moore separately for five

8    years, and prohibited Moore from holding any guns.  [FAC ¶ 143.]

9    Even now, upon review of all the documents submitted, it is unclear to the

10   Court whether, as a matter of state law, Moore has a valid and enforceable judgment

11   against Bragg based on the jury verdict entered in his favor.  [*See, e.g.*, FAC ¶¶ 158,

12   160.]  As the FAC alleges, several California judges have held that the judgment

13   was interlocutory in nature, and that "there was still a bifurcated cause of action …

14   still pending."  [FAC ¶ 160.]  Also, according to the FAC, another California judge

15   has said that it was immediately enforceable.  [FAC ¶ 168.]

16   **III.   Causes of Action**

17   The FAC contains nine causes of action.  The first cause of action alleges a

18   violation of 42 U.S.C. §§ 1983 and 1985(3) by all defendants "by depriving Plaintiff

19   of his rights to property and economic advantage and the right to earn a living, by

20   depriving Plaintiff access to court in the United States, in violation of the [F]ifth

21   Amendment of the United States Constitution and its 'reasonableness' standard, "by

22   false imprisonment, without any legal justification," and through municipal liability.

23   This cause of action includes myriad factual allegations, somewhat detached from

24   the facts discussed above.  In fact, it is not quite clear what the basis for Moore's

25   claim *really* is.  Distilled down, the FAC accuses the government entity defendants

26   of improper training and practices of protecting officers, failing to properly

27   investigate his claims, and unlawful detention and arrest of Moore.  The Court does

28   not even understand what arrest and detention Moore is referring to.  But, perhaps

6

1   more importantly, the claim repeats the essential core of the FAC—that Bragg stole

2   his property, and that no law enforcement officials helped him get it back.

3          The other causes of actions are more easily summarized:

4          (2) Violation of California Civil Code Sections 43, 51.7, and 52.1 through 52.4,

5   against all defendants;

6          (3) False imprisonment, against the Los Angeles Police Department, the Los

7   Angeles County Sheriff's Department, City of Los Angeles, and County of Los

8   Angeles, based on events occurring on August 27, 2012, July 19, 2013, and March

9   2015, where Moore was "not to move from where he was standing and/or sitting for

10  a period of time, approximately one hour or more";

11         (4) False arrest, against the Los Angeles Police Department, the Los Angeles

12  County Sheriff's Department, City of Los Angeles, and County of Los Angeles,

13  based on events occurring on July 19, 2013 and March 2015;

14         (5) Negligence, against all defendants;

15         (6) Intentional interference with contractual relations, against all defendants, by

16  preventing Moore from completing an existing contract with the musical group En

17  Vogue;

18         (7) Negligent interference with prospective economic advantage, against all

19  defendants;

20         (8) Misrepresentation, against all defendants, and

21         (9) Conspiracy to violate Moore's civil rights.

22         Moore seeks actual damages of nearly $226 million, compensatory damages

23  of about $173 million, $150 million in exemplary or punitive damages, and attorney

24  fees, costs, and all legal interest.

25                          **GOVERNING STANDARD**

26  **I.     Federal Rules of Civil Procedure 8 & 12(b)(6)**

27         A defendant is entitled to dismissal under Rule 12(b)(6) when a complaint

28  fails to state a cognizable legal theory or alleges insufficient facts under a

cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Conclusory allegations are insufficient. *Id.* at 678-79. Although a complaint need not set forth detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

On review of a Rule 12(b)(6) motion, the Court accepts all facts alleged in a complaint as true and draws all reasonable inferences in favor of the plaintiff. *Gant v. Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014). For an allegation to be "entitled to the assumption of truth," it must be well-pleaded, that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion. *Iqbal*, 556 U.S. at 682.

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted) (*quoted in Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1025 (9th Cir. 2014)). Nevertheless, courts must "continue to construe *pro se* filings liberally when evaluating them under *Iqbal*, particularly in civil rights cases." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (*quoting Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)) (internal quotation marks omitted).

Moreover, the Court has authority to dismiss *sua sponte* claims against unserved defendants, or defendants in the same position as other moving defendants. *See, e.g.*, *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir.

2015) (a "trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6)") (*quoting Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987)); *see also Abagninin v. AMVAC Chemical Corp.,* 545 F.3d 733, 742 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared."); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding that a court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related").

## II.     Leave to Amend

If a complaint is to be dismissed, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely."  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (internal citations and quotation marks omitted)).  Leave to amend is not appropriate, even given the liberal pleading standard for *pro se* litigants, when "the pleading 'could not possibly be cured by the allegation of other facts.'"  *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (*quoting Lopez*, 203 F.3d at 1131).

**A PRELIMINARY NOTE**

The Court would be remiss without describing its concern that Moore has violated Federal Rule of Civil Procedure 11 ("Rule 11") in submitting his First Amended Complaint.  Under Rule 11, "[b]y presenting to the court" the FAC, Moore "certifie[d] that to the best of … [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," "the factual

9

contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). The FAC is replete with allegations about asserted events that this Court doubts Moore *personally* witnessed, such as summaries of private conversations between judges and conversations between Bragg and judicial clerks. None of these allegations were made under information and belief, nor were they attested to with a basis for personal knowledge. Although strictly speaking, Moore was not required to state *how* he knows what he knows, he is required to plead only things he knows or caveat his statements as mere beliefs for which he has a good faith basis. ***Moore is cautioned in any future federal proceedings to ensure his own compliance with Rule 11.***

## DISCUSSION

I.   **All Claims Against the Unserved Los Angeles Defendants Should Be Dismissed Without Prejudice Because the Rule 4(m) Deadline Has Expired.**

At the time of the filing of the FAC, Rule 4(m) provided that, if service of the summons and complaint is not made upon a defendant within 120 days of filing the complaint, federal district courts have the authority to *sua sponte* dismiss an action without prejudice, after notice to the plaintiff.[4] *See generally Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (requiring district courts to give notice to plaintiff before dismissing under Rule 4(m)). If, however, a plaintiff shows good cause for the failure to serve the complaint within that time frame, the Court must extend the time for accomplishing service. Fed. R. Civ. P. 4(m). The burden of establishing good cause is on the plaintiff. *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007). The "good cause" exception to Rule 4(m) applies "only in limited circumstances" and is not satisfied by "inadvertent error or ignorance of the

---

[4] The period has subsequently been reduced from 120 to 90 days. The Court does not apply this rule retroactively.

1   governing rules." *Hamilton v. Endell*, 981 F.2d 1062, 1065 (9th Cir. 1992). "Pro se
2   litigants must follow the same rules of procedure that govern other litigants." *King*
3   *v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also Ghazali v. Moran*, 46 F.3d 52,
4   53-54 (9th Cir. 1995) (*per curiam*) (failure of *pro se* litigant to follow procedural
5   rules justified dismissal of civil rights action).

6          The initial complaint was filed October 13, 2015, and the FAC was filed on
7   November 17, 2015. [Dkts. 1 & 16.] Starting the 120-day clock from the filing of
8   the FAC, the Rule 4(m) deadline expired on March 16, 2016. According to the
9   docket, Moore has not served the Unserved Los Angeles Defendants. Moore also
10  did not request an extension of time to serve the FAC, within the 4(m) period or
11  thereafter.

12         Accordingly, the Court recommends that the claims against the Unserved Los
13  Angeles Defendants be dismissed without prejudice under Rule 4(m). This
14  Amended Report and Recommendation again provides Moore with the required
15  notice, because he has the right to file objections in response and the opportunity to
16  establish good cause for his failure to effect service of process, if he can.[5]

17  **II.     The Court Should Dismiss the Unknown Defendants Without Prejudice.**

18         "Courts in the Ninth Circuit have recognized that generally [in a non-diversity
19  jurisdiction case], Doe pleading is improper in federal court and is disfavored."
20  *Fisher v. Kealoha,* 869 F.Supp.2d 1203, 1213 (D.Haw. 2012) (citing cases) (internal
21  quotation marks omitted); *see also California ex rel. Ingenito v. U.S. Army*, 91 F.
22  Supp. 3d 1185, 1189 (E.D. Cal. 2015). As one district court in the Ninth Circuit
23  summarized,

24

25                 If there are unknown persons or entities, whose role is
                   known, that fact should be expressed in the complaint,
26                 but it is unnecessary and improper to include 'Doe'

27  _____

28  [5] Moore's Objections to the original Report [Dkt. 43] do not address his failure to
     serve these Defendants. [Dkt. 45.]

1
2
3
4

> parties in the pleadings. This in no way precludes a party's right, upon learning of the participation of additional parties, to seek to amend the complaint (or answer) and have the amendment relate back in time to the original filing if the circumstances justify it.

5

*Graziose v. American Home Prods. Corp.,* 202 F.R.D. 638, 643 (D. Nev. 2001).

6
7
8
9

Accordingly, although the allegations against unknown defendants are proper (and indeed, are preferable when a would-be-defendant's name is not known), no causes of action should be alleged against an unknown defendant when there is at least one known defendant.  The proper procedure, as stated above, is to move to amend the complaint once an unknown defendant's name becomes known.  Accordingly, the Doe defendants should be dismissed.

10
11
12

**III.** **The FAC Fails to Allege Federal Claims Against the Judicial Defendants that are Not Barred by the Doctrines of Judicial and Quasi-Judicial Immunity.**

13
14
15

**A.** **The federal claims against the Judges are barred by judicial immunity.**

16
17
18
19
20
21
22

"Absolute judicial immunity 'insulates judges from charges of erroneous acts or irregular action,'" *Burton v. Infinity Capital Mgmt.*, 753 F.3d 954, 959 (9th Cir. 2014) (*quoting In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002)), "even when it is alleged that [a judge's] action was driven by malicious or corrupt motives[.]" *Castillo*, 297 F.3d at 947 (9th Cir. 2002) (*quoting Forrester v. White*, 484 U.S. 219, 225 (1988)).

23
24
25
26
27
28

Judicial immunity applies broadly to all "civil suits arising out of … judicial functions," regardless of the type of relief sought.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *see id.* at 9-10;  *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996).  To determine what constitutes a "judicial act," a court considers whether "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before

the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989) (citation omitted) (*cited in Salessi v. Commonwealth Land Title Ins. Co.*, No. SA CV 08-01274-DOC, 2013 WL 5676209 at *9 (C.D. Cal. Oct. 16, 2013)).

Judicial immunity bars all asserted claims against the Judges. The FAC alleges that various California Superior Court judges acted improperly, with racial and gender bias and other nefarious motives, by issuing various orders in Moore's many state court cases. The issuance of orders ruling on motions and judgments are the quintessential core of the judicial function. Accordingly, the Judges are absolutely immune from the federal claims.

Moore attempts to invoke the exception to absolute judicial immunity for "action[], though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. That exception does not apply here. Moore does not contest that the California Superior Court judges acted in cases pending before them involving Moore's property and other rights. Nor does he claim that the subject matter of their orders was unrelated to the lawsuits before them. Rather, he attacks the results from and alleged motivations underlying the court orders themselves.

Because no conceivable amendment consistent with the presently pled facts would overcome judicial immunity, these claims must be dismissed without leave to amend.[6]

_____

[6] The Judicial Defendants argue that the Court lacks jurisdiction over the case under the *Rooker-Feldman* doctrine, which prohibits "state-court losers" from challenging "state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483, n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); [Dkt. 21 at 5-6.] A predicate to applying *Rooker-Feldman* is that a final judgment have been entered in the state courts before suit was initiated. As noted earlier, although the Court has attempted to ascertain whether such a judgment

**B.    The federal claims against the Clerk are barred by quasi-judicial immunity.**

Separate from Moore's attack on the Judges, he alleges that the Clerk "forged a judge or judicial officer's name and signature on an official judicial document to recall … the writ [of execution] legally issued to Mr. Moore," and did so in response to threats of arrest from Bragg.  [FAC ¶ 198.]  According to the FAC, Moore asked the Clerk who signed this document but did not receive a response.  [*Id.*]  He also asked Judge Beckloff, who said "he was not aware of the writ being recalled" and did not himself recall the writ.  [*Id.*]

"[C]ourt clerks and other non-judicial officers" enjoy quasi-judicial immunity "when they perform tasks that are an integral part of the judicial process," or "for purely administrative acts—acts which taken out of context would appear ministerial, but when viewed in context are actually a part of the judicial function." *Castillo*, 297 F.3d at 952; *Duvall v. County of Kisap*, 260 F.3d 1124, 1142-43 (9th Cir. 2001) (*quoting Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987)); *see also Burton v. Infinity Capital Mgmt.*, 753 F.3d 954, 961 (9th Cir. 2014) (explaining that law clerk's preparation of orders "was intimately connected with the judge's own exercise of the judicial function" (*quoting Moore*, 96 F.3d at 1240)); *Duvall*, 260 F.3d at 1142 n.1 (collecting cases).

Here, Moore alleged an act by the Clerk—the issuance of a court order—that facially falls within the scope of the quasi-judicial immunity doctrine.  Even assuming arguendo that forgery could constitute an act sufficiently outside judicial jurisdiction to result in liability, the FAC, when reviewed alongside documents

---

was entered through a hearing and request for additional record development, the parties provided the Court with no clear answer about the precise procedural posture of Moore's underlying cases.  Accordingly, the Court cannot determine *at this time* and *on this record* that it lacks jurisdiction.  Based on the Court's review of the docket in Case No. BC459449 (which is judicially noticeable), there appear to be continuing proceedings.

Moore has submitted for judicial notice, shows that Moore has not plausibly alleged and cannot plausibly allege any such conduct.  According to Moore's request for judicial notice, he attached as Exhibit P a "copy of the forged Writ recall" and as Exhibit Q a "[c]opy of pleading containing Judge Beckloff's signature."  [Dkt. 39 at 4.]  The Court agrees with Moore that the signature on the order vacating the writ of execution, dated March 5, 2015, is facially different from Beckloff's signature on another order signed roughly four months later.  [*Compare* Dkt. 39-1 at 57 ("Vacating Order") *with* Dkt. 39-1 at 60.]  But a theory of the Clerk's forgery at Bragg's behest is not a plausible conclusion from those facts; that another judge signed the Vacating Order is.  The Vacating Order does not purport to be signed by Judge Beckloff, and so the fact he said he did not sign it means nothing whatsoever.  Even if the Clerk signed it, so long as a judge properly authorized the signature, that signature is an "administrative act" that "viewed in context [is] actually a part of the judicial function."  *Castillo*, 297 F.3d at 952;

The Court recommends that Moore not be granted leave to amend.  He has filed a lengthy First Amended Complaint that lays out his detailed understanding of events.  In response to the Judicial Defendants' motion to dismiss, he submitted another roughly eighty pages coupled with a request to judicially notice a significant number of documents.  In short, Moore has demonstrated that he has the ability and skills to represent his interests beyond that of a normal *pro se* litigant.  But even applying the ordinary, liberal standard for *pro se* filings, the Court sees no way that "the pleading 'could … possibly be cured by the allegation of other facts.'" *Ramirez*, 334 F.3d at 861 (*quoting Lopez*, 203 F.3d at 1131).  The documents Moore himself submitted do not amount to a plausible claim of forgery.  Even drawing all inferences in his favor, it is plain that the signatures on Exhibits P and Q differs because they reflect the signatures of different judges.  Although Moore is not required to negate every alternative theory, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim

15

1   entitling the plaintiff to relief." *Moss*, 572 F.3d at 969.  Based on the factual

2   documents that Moore has submitted and the fact that Moore has already once

3   amended his complaint, the Court is convinced that no amendment to the pleadings

4   consistent with Moore's Rule 11 obligations would result in a plausible claim of

5   forgery against the Clerk.  ***Moore should not replead any federal claim against the***

6   ***Judges or Clerk in any Second Amended Complaint.***

7   **IV.   The Federal Claims Against Bragg Should Also Be Dismissed.**

8        **A. Bragg is not liable for a Section 1983 violation premised on a**

9          **conspiracy theory.**

10        Although Moore purports to state a separate action for "conspiracy" under an

11   unspecified theory, the Court liberally construes the FAC as stating a Section 1983

12   claim premised on conspiracy liability.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935

13   (9th Cir. 2012) (en banc) ("Conspiracy is not itself a constitutional tort under §

14   1983."); *id.* (explaining that conspiracy "does not enlarge the nature of the claims

15   asserted by the plaintiff, as there must always be an underlying constitutional

16   violation"); *Cassettari v. Nev. Cnty.,* 824 F.2d 735, 739 (9th Cir. 1987) ("The

17   insufficiency of … allegations to support a section 1983 violation precludes a

18   conspiracy claim predicated upon the same allegations.").  The FAC alleges two

19   potential theories of "conspiracy": (1) that Bragg induced police officers and court

20   officers to wrongfully circumvent the execution of an otherwise final judgment, and

21   (2) that she complained to the police, which resulted in his detention.

22        To state a conspiracy claim under Section 1983, a plaintiff must show (1) an

23   agreement between the defendants to deprive the plaintiff of a constitutional right,

24   (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation.

25   *See Gilbrook v. City of Westminster,* 177 F.3d 839, 856–57 (9th Cir. 1999) (to

26   establish a civil conspiracy, the plaintiff must show that the conspiring parties

27   reached a unity of purpose or common design and understanding, or a meeting of

28   the minds in an unlawful agreement).  "To be liable, each participant in the

1   conspiracy need not know the exact details of the plan, but each participant must at

2   least share the common objective of the conspiracy." *United Steelworkers of Am. v.*

3   *Phelps Dodge Corp.,* 865 F.2d 1539, 1541 (9th Cir. 1989).  Because conspiracies

4   are secret agreements, "[a] defendant's knowledge of and participation in a

5   conspiracy may be inferred from circumstantial evidence and from evidence of the

6   defendant's actions." *Gilbrook,* 177 F.3d at 856–57.

7        To plead a claim of conspiracy under Section 1983, Moore must allege facts

8   with sufficient particularity to show an agreement or a meeting of the minds to

9   violate his constitutional rights. *Miller v. California,* 355 F.3d 1172, 1177 n. 3 (9th

10  Cir. 2004); *Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir. 1998).  In the context of a

11  Section 1983 claim, "[c]onspiracy may ... enlarge the pool of responsible defendants

12  by demonstrating their causal connections to the violation; the fact of the conspiracy

13  may make a party liable for the unconstitutional actions of the party with whom he

14  has conspired." *Lacey v. Maricopa County,* 693 F.3d 896, 935 (9th Cir. 2012) (*en*

15  *banc* ).

16       "As with [Moore's] other claims, his allegations of conspiracy must satisfy

17  *Iqbal*" and *Twombly*.  *Lacey*, 693 F.3d at 935.  That means that "allegation of

18  parallel conduct and a bare assertion of conspiracy will not suffice.  Without more,

19  parallel conduct does not suggest conspiracy, and a conclusory allegation of

20  agreement at some unidentified point does not supply facts adequate to show

21  illegality." *Twombly*, 550 U.S. at 556-57.  Despite the level of detailed allegations

22  of communications between Bragg and government officials, the FAC fails to

23  properly allege any conspiracy between Bragg and any other government actor.  At

24  most, Moore's claims amount to conduct by law enforcement officials and judicial

25  officers consistent with Bragg's interests, or some "conclusory allegation of

26  agreement [with Bragg] at some unidentified point." *Id.*; [*see, e.g.* FAC ¶¶ 75, 80,

27  83-90, 93, 95, 97, 194, 213, 217, 223-24, 227.]  Nowhere does Moore identify a

28  point of agreement or a shared intent to violate his rights, as is required.

1  Moore's two theories of conspiracy: (1) that Bragg induced police officers and
2  court officers to wrongfully circumvent the execution of an otherwise final
3  judgment, and (2) that she complained to the police, which resulted in his detention,
4  are insufficient to plead a plausible conspiracy claim.  As to the first, there is no
5  allegation that any governmental agency or official "affirm[ed], authorize[d],
6  encourage[d], or facilitate[d] unconstitutional conduct through its involvement with"
7  Bragg.  Nor does the FAC allege that "the state knowingly accept[ed] the benefits
8  derived from unconstitutional behavior," or indeed, that the government benefited at
9  all.  *See Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (*quoting Parks Sc.*
10 *Of Bus, Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).

11  Moore's second theory—that Bragg's request for police assistance renders her
12 a conspirator—has already been foreclosed.  The fact that Bragg is a police officer
13 does not mean that everything Bragg does is state action for purposes of Section
14 1983.  *Gretchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (finding police officer
15 not acting under color of state law for purposes of Section 1983 when he threatened
16 to bring defamation lawsuit against a motorist who filed a complaint about the
17 officers conduct during a traffic stop).  As the Ninth Circuit explained in *Van Ort v.*
18 *Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996), "[i]f a government officer
19 does not act within h[er] scope of employment or under color of state law, then that
20 government officer acts as a private citizen."  Here, Bragg's act of requesting help
21 from the police to enforce a restraining order against a domestic partner (which
22 according to Moore she did not possess) is ***not within the scope of her job duties as***
23 ***an officer*** and therefore not sufficient to constitute "state action."  Drawing all
24 inferences in favor of Moore, the facts in the FAC establish that, at this point in
25 time, Bragg was acting as a private citizen and not under color of state law.

26  In addition, the Ninth Circuit has repeatedly and long held that "merely
27 complaining to the police does not convert a private party into a state actor."
28 *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989); *see Harrell v. Costco*,

1  422 Fed. App'x 635, 635 (9th Cir. 2011); *Dietrich v. John Ascuaga's Nugget*, 548

2  F.3d 892, 900 (9th Cir. 2008); *see also Hodges v. Holiday Inn Select*, No. 07-CV-

3  1169 OWW TAG, 2008 WL 1945532, at *4 (E.D. Cal. May 1, 2008) *report and*

4  *recommendation adopted,* No. 107CV1169OWWTAG, 2008 WL 2477615 (E.D.

5  Cal. June 16, 2008) (collecting out-of-circuit cases).  Accordingly, Moore's

6  conspiracy claim against Bragg under Section 1983 must be dismissed.  The Court

7  will afford Moore one final opportunity to amend his complaint in an attempt to

8  correct this claim.  The Court reminds Moore that all allegations in any amended

9  complaint must be consistent with his good faith understanding of the facts and law

10  as required by Rule 11.

11  **B.    The FAC does not allege a plausible Section 1985(3) claim against**

12  **Bragg.**

13  "To bring a cause of action successfully under § 1985(3), a plaintiff must allege

14  and prove four elements:

15  > (1) a conspiracy; (2) for the purpose of depriving, either
16  > directly or indirectly, any person or class of persons of
      > the equal protection of the laws, or of equal privileges
17  > and immunities under the laws; and (3) an act in
      > furtherance of this conspiracy; (4) whereby a person is
18  > either injured in his person or property or deprived of any
      > right or privilege of a citizen of the United States."
19

20  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (*quoting United*

21  *Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 828, 828-29

22  (1983).  Further, the second of these four elements requires that, in addition to

23  identifying a legally protected right, a plaintiff must demonstrate that the deprivation

24  was motivated by "some racial, or perhaps otherwise class-based, invidiously

25  discriminatory animus behind the conspirators' action." *Id.* (internal citation

26  omitted.)  The Court has already determined that Moore has failed to plead a

27  conspiracy claim under Section 1983.  For the same reasons, his Section 1985(3)

28  claim fails.  In addition, Moore fails to sufficiently allege that Bragg's conduct was

19

1   motivated by some racial or otherwise class-based, invidiously discriminatory

2   animus.  Accordingly, the Court recommends that Moore be granted leave to

3   attempt to correct the deficiencies as to his Section 1985(3) claim against Bragg.

4   Should Moore file an amended complaint, the Second Amended Complaint must be

5   complete, without reference to previously submitted versions of the complaint or

6   exhibits.  The court again cautions Moore that he must be mindful of his Rule 11(a)

7   obligations, which require a litigant to make only those factual allegations supported

8   by his or her personal knowledge or belief based on information from other sources.

9   Conclusory allegations do not suffice.

10  **V.    The Court Should Decline to Exercise Supplemental Jurisdiction Over**

11         **the Remaining State Law Claims.**

12         The Court has already recommended that all claims against the Unserved Los

13  Angeles Defendants be dismissed, and that the federal claims against the Judicial

14  Defendants and Bragg be dismissed.  Therefore, all that remains for the Court's

15  consideration are the state law claims against the Judicial Defendants and Bragg.

16  Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental

17  jurisdiction over" pendent state claims if it "has dismissed all claims over which it

18  has original jurisdiction."  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726

19  (1966) (if no viable federal claims exist, federal courts may decline to exercise

20  supplemental jurisdiction over pendent state claims); *e.g., Foli v. Metro. Water Dist.*

21  *of S. California*, 592 Fed. App'x 634, 635 (9th Cir. Feb. 29, 2015) ("When a federal

22  court dismisses all federal claims before trial, it should ordinarily dismiss any state

23  claims as well."); *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1046 (9th

24  Cir. 1994) (*quoted in Wiley v. Dep't of Children & Family Servs.*, No. 13-56915,

25  2015 WL 8732562, at *1 (9th Cir. Dec. 15, 2015)) ("When ... the court dismisses the

26  federal claim leaving only state claims for resolution, the court should decline

27  jurisdiction over the state claims and dismiss them without prejudice."  (citation and

28  internal quotation marks omitted; alteration in original)).  Declining to exercise

supplemental jurisdiction is particularly appropriate here in light of Moore's allegations of ongoing California court cases arising from the same events.

Accordingly, the Court recommends that the exercise of supplemental jurisdiction over his remaining state law claims be declined and that these claims be dismissed for lack of jurisdiction.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that the District Judge issue an Order:

(1) accepting this Amended Report and Recommendation;

(2) Granting Defendants' Motions to Dismiss as follows:

    a)   dismissing the FAC's federal claims against the Judicial Defendants with prejudice;

    b) dismissing the FAC's federal claims against Defendant Bragg with leave to amend;

    c)   dismissing the FAC's federal claims against the Unserved Los Angeles Defendants and Doe defendants with leave to amend;

    d)   declining to exercise supplemental jurisdiction over Moore's state law claims;

(3) denying all pending motions as moot; and

(4) dismissing the FAC with leave to amend within 30 days of the date of the District Judge's Order.

DATED: October 11, 2016

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE**

Reports and Recommendations are not appealable to the United States Court of Appeals for the Ninth Circuit, but may be subject to the right of any party to file objections as provided in the Local Civil Rules for the United States District Court for the Central District of California and review by the United States District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until the District Court enters judgment.